HONORABLE STEVE C. JONES, UNITED STATES DISTRICT JUDGE
This matter appears before on the Motion of Western Washington Laborers-Employers Pension Trust for Appointment as Lead Plaintiff and Approval of Selection of Lead and Liaison Counsel (Doc. No. [13] ) and the Motion of Arkansas Teacher Retirement System for Appointment as Lead Plaintiff and Approval of Selection of Counsel (Doc. No. [14] ).
The Private Securities Litigation Reform Act of 1995 establishes procedures governing the appointment of lead plaintiff and lead counsel "in each private action arising under [the Securities Exchanges Chapter of Title 15] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). First, the plaintiff who files the initial complaint must publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. § 78u-4(a)(3)(A). Within sixty days, any member of the purported class may then move the Court to be appointed lead plaintiff. Id. After considering *1350 the motions, the Court must appoint the plaintiff who is "most capable of adequately representing the interests of the class members." § 78u-4(a)(3)(B)(i).
The statute creates a presumption that the most adequate plaintiff, 1) "has either filed the complaint or made a motion in response to a notice;" 2) "in the determination of the court, has the largest financial interest in the relief sought by the class;" and 3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc). The presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff ... will not fairly and adequately protect the interests of the class[,]" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." § 78u-4(a)(3)(B)(iii)(II).
Case law also makes clear that "[t]he PSLRA 'sets up a rebuttable presumption that the plaintiff with the largest stake in the controversy will be the lead plaintiff.' " Belmont Holdings Corp. v. Suntrust Banks, Inc., Nos. 1:09-cv-1185-WSD, 1:09-cv-1310-WSD, 1:09-cv-1459-WSD, 2009 WL 3188695, at *2 (N.D. Ga. Sept. 29, 2009) (quoting In re Cavanaugh, 306 F.3d 726, 729 n.2 (9th Cir. 2002) ). Because the intent of the PSLRA is to determine the plaintiff most capable of pursuing the action and representing the class, "the court need only explore the portions of Rule 23 dealing with the qualities of the class representative, typicality and adequacy." Plymouth Cnty. Ret. Sys. v. Carter's, Inc., No. 1:08-CV-2940-JOF, 2009 WL 692141, at *2 (N.D. Ga. Mar. 13, 2009). Thus, "[s]o long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." Belmont Holdings, 2009 WL 3188695, at *2 (internal quotations omitted).
Arkansas Teacher Retirement System (ATRS) is the Movant who claims the largest loss in this action.[1] ATRS claims it suffered a loss of approximately $820,940. Doc. No. [29], p. 2; Doc. No. [14-4].[2] The Movant who claims the second largest loss is the Western Washington Laborers-Employers Pension Trust ("Western Washington Trust") who claims it lost $203,546.93. Doc. No. [13-2], p. 119. The ATRS loss is four times larger than the loss of Western Washington Trust.
Because ATRS claims the largest financial stake in the controversy, it is presumed to be the most adequate plaintiff under the PSLRA.
*1351 In opposition, Western Washington Trust argues that ATRS' motion should be rejected because appointing ATRS as lead plaintiff would violate the "[r]estrictions on professional plaintiffs" provision of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B)(vi) ( "5 -in-3 Provision"). Doc. No. [30], p. 5.[3] Said provision provides in relevant part: "Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period." 15 U.S.C.A. § 78u-4(a)(3)(B)(vi).[4] Western Washington Trust states that ATRS has "been appointed lead plaintiff in thirteen securities class actions filed in the past three years, and it is serving as lead plaintiff in fifteen active securities class actions." Doc. No. [32], p. 5.[5]
There appears to be a split of authority on the applicability of the 5-in-3 Provision to institutional investors, such as ATRS. See Doc. No. [30], p. 11 and Doc. No. [33], p. 12. After review, the Court aligns with the authority that finds inapplicability to institutional investors. In the alternative, the Court finds that even if it were to hold that the 5-in-3 provision applies to institutional investors, like ATRS, " § 78u-4(a)(3)(B)(vi) provides the Court with the discretion to lift the bar in appropriate cases." In re Extreme Networks Inc. Sec. Litig., No. 15-CV-04883-BLF, 2016 WL 3519283, at *8 (N.D. Cal. June 28, 2016) (citing 15 U.S.C. § 78u-4(a)(3)(B)(vi) (restricting professional plaintiffs "[e]xcept as the court may otherwise permit"); In re Diamond Foods, Inc., Sec. Litig., 281 F.R.D. 405, 411 (N.D. Cal. 2012) ("[T]he text of the statute clearly provides courts with the authority to lift the bar, even for those who may be considered 'professional plaintiffs,' if they choose to do so in an exercise of discretion."); Casden v. HPL Techs., Inc., No. C-02-3510 VRW, 2003 WL 27164914, at *10 (N.D. Cal. Sept. 29, 2003) (observing that, in the alternative, some courts have "exercised their discretion under § 78u-4(a)(3)(B)(vi) to lift the presumptive bar with respect to institutional plaintiffs")).
The Court finds that it is appropriate to exercise its discretion to not apply the 5-in-3 Provision here because ATRS has the largest financial stake in the outcome of this case, it has significant experience and expertise in class action securities litigation due to it being a sophisticated *1352 institutional investor, and it satisfies the typicality and adequacy requirements under Rule 23(a). In re Extreme Networks, 2016 WL 3519283, at *8. The appointment of ATRS as lead plaintiff is also consistent with the purposes of the PSLRA[6] and there is no evidence that ATRS is unable to efficiently function as lead plaintiff. Id. [7]
Lastly, the Court finds that ATRS satisfies the typicality[8] and adequacy[9] requirements of Federal Rule of Civil Procedure as ATRS has stated that it "is not subject to any unique or special defenses, seeks the same relief and advances the same legal theories as other Class members." Doc. No. [14-1], p. 14. ATRS also states that it has "retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently ... [and] has resources sufficient to pursue the Action to a successful conclusion." Id. at p. 15.
The PSLRA permits the most adequate plaintiff to select and retain counsel to represent the class, subject to court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). ATRS selected the law firms of Labaton Sucharow LLP ("Labaton Sucharow") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Co-Lead Counsel and Caplan Cobb LLP ("Caplan Cobb") as Liaison Counsel for the Class. "The [C]ourt has reviewed the resumes of these firms and has noted their involvement in similar law suits. The [C]ourt is satisfied that these firms are competent, experienced, and qualified to represent the interests of the plaintiff class." Lax, 1997 WL 461036, at *7. The Court approves the three firms in the capacity for which ATRS proposes to use them, provided there is no duplication of attorneys' services and the use of co-lead counsel does not in any way increase attorneys' fees and expenses.[10] Id;see also *1353 In re MicroStrategy Inc. Sec. Litig., 110 F.Supp.2d 427, 438 (E.D. Va. 2000) ("a district court should approve plaintiff's choice of lead counsel based solely on that counsel's competence, experience, and resources, saving the question of fees until the conclusion of the litigation.").
III. CONCLUSION
The Motion of Western Washington Laborers-Employers Pension Trust for Appointment as Lead Plaintiff and Approval of Selection of Lead and Liaison Counsel (Doc. No. [13] ) is DENIED .
The Motion of Arkansas Teacher Retirement System for Appointment as Lead Plaintiff and Approval of Selection of Counsel (Doc. No. [14] ) is GRANTED . The Court hereby holds that Arkansas Teacher Retirement System (ATRS) is the "most adequate plaintiff" and otherwise satisfies the requirements of Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"). The Court hereby APPOINTS ATRS as Lead Plaintiff in the Action. ATRS, as the Lead Plaintiff pursuant to Section 21D(a)(3)(B)(v) of the Exchange Act, has selected Labaton Sucharow LLP ("Labaton Sucharow") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Co-Lead Counsel and Caplan Cobb LLP ("Caplan Cobb") as Liaison Counsel for the Class. The Court APPROVES this selection, and hereby APPOINTS Labaton Sucharow and Bernstein Litowitz to serve as Co-Lead Counsel for the Class and Caplan Cobb as Liaison Counsel for the Class.[11]
IT IS HEREBY FURTHER ORDERED THAT:
1. The Clerk shall re-caption this action as In re Aaron's, Inc. Securities Litigation.
2. Each new case that arises out of the subject matter of this Action and is filed in this Court or transferred to this Court shall be consolidated with this Action and this Order shall apply thereto, unless a party objecting to this Order or any provision of this Order, within ten (10) days after the date upon which a copy of this Order is served on counsel for such party, files an application for relief from this Order or any provision herein and this Court deems it appropriate to grant such application.
3. During the pendency of this litigation, or until further order of this Court, *1354 the parties shall take reasonable steps to preserve all documents within their possession, custody or control, including computer-generated and stored information and materials such as computerized data and electronic mail, containing information that is relevant to or which may lead to the discovery of information relevant to the subject matter of the pending litigation.
4. No motion, request for discovery, or other pretrial proceedings shall be initiated or filed by any plaintiffs without the approval of Lead Counsel, so as to prevent duplicative pleadings or discovery by plaintiffs. No settlement negotiations shall be conducted without the approval of Lead Counsel.
IT IS SO ORDERED, this 18th day of September, 2017.

"ATRS is a public pension fund headquartered in Little Rock, Arkansas. The System was established in 1937 to provide retirement, disability, and survivor benefits to employees of Arkansas public schools and educationally related agencies. ATRS is responsible for the retirement income of these employees and their beneficiaries. As of June 30, 2016, ATRS managed over $15.2 billion in assets on behalf of roughly 128,000 total members." Doc. No. [33-2], ¶ 4.

ATRS also claims the largest financial interest under relevant factors recognized by other courts. Doc. No. [29], pp. 2, 5 (citing Lax v. First Merchants Acceptance Corp., No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997) ("The PSLRA does not state how the court should determine who has the largest financial interest, but four factors are surely relevant: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs.")). ATRS states that it "purchased more than three times the number of Aaron's shares that Western Washington Trust purchased, and spent more than three times what Western Washington Trust spent to buy those shares." Doc. No. [29], pp. 2, 6.

Defendants have also filed an opposition brief with a similar argument; however, both ATRS and Western Washington Trust acknowledge that Defendants generally do not have standing to address the question of who will be lead plaintiff for a proposed class. Doc. No. [32], p. 8, n.4; Doc. No. [33], pp. 8, 19.

"This so-called 5-in-3 rule applies only where the purported lead plaintiff is or has served as lead plaintiff in other cases during the relevant time frame, it does not apply (in terms of counting toward the five case limit) to the number of cases the purported lead plaintiff has filed a securities class action complaint or to cases where it has moved to be designated, but was not approved, as lead plaintiff. Moreover, even then the statutory provision's reach only goes back to cover a three year period from the date in question." Cunha v. Hansen Nat. Corp., No. EDCV 08-01249-SGLJCX, 2009 WL 2029797, at *3 (C.D. Cal. July 13, 2009).

ATRS states that "Defendants misstate the facts and ignore the procedural posture of the vast majority of the cases referenced. In reality, ATRS is only serving as Lead Plaintiff in eleven active matters that were filed in the last three years (i.e., matters that have not been dismissed, settled, or on appeal)." Doc. No. [33], p. 17 n.10.

"The central purpose of the PSLRA is to prevent 'frivolous lawsuits initiated to intimidate defendants and force them into a quick settlement.' " Pafumi v. Davidson, No. 05-61679-CIV, 2008 WL 4084418, at *5 (S.D. Fla. Sept. 3, 2008). In addition, in enacting the PSLRA, the Conference Committee of the United States Congress stated that it "believe[d] that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions." H.R. CONF. REP. 104-369, 34, 1995 U.S.C.C.A.N. 730, 733; see also Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Fin. Corp., 762 F.3d 1248, 1260 (11th Cir. 2014) ("both Congress and the courts have recognized that these sorts of investors are generally preferred as class representatives in securities litigation.").

The Court declines to adopt Western Washington Trust's arguments and non-binding citation of authority to the contrary.

"[Typicality] is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992).

"To satisfy the adequacy of representation requirement, the class representatives must demonstrate they have 'common interests with unnamed class members and will vigorously prosecute the interests of the class through qualified counsel.' This requirement applies to both the named plaintiff and counsel. In evaluating the adequacy factor, the Court follows the 'general principle that adequacy of representation is primarily based on the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the class and whether plaintiffs have interests antagonistic to those of the rest of the class.' " Campos v. ChoicePoint, Inc., 237 F.R.D. 478, 487 (N.D. Ga. 2006).

As stated above, ATRS has selected two firms to serve as lead counsel. In light of ATRS' assurances that such will not increase costs or lead to inefficiency, the Court has no concern with the two law firm arrangement. Doc. No. [33], p. 8 ("ATRS selected Bernstein Litowitz and Labaton Sucharow as Counsel based on their successful experience working together when representing ATRS and other investors in securities class actions. ATRS negotiated a contingency fee arrangement with these firms whereby the fee awarded to Counsel will be the same as if ATRS retained just one firm. In other words, ATRS negotiated an arrangement whereby the class receives the benefit of two highly experienced law firms without increasing the fees charged to the class.") (internal citations omitted).

Lead Counsel shall have the following responsibilities and duties:
(a) to coordinate the briefing and argument of motions;
(b) to coordinate the conduct of discovery proceedings;
(c) to coordinate the examination of witnesses in depositions;
(d) to coordinate the selection of counsel to act as a spokespersons at pretrial conferences;
(e) to call meetings of the plaintiffs' counsel as they deem necessary and appropriate from time to time;
(f) to coordinate all settlements negotiations with counsel for defendants;
(g) to coordinate and direct the pretrial discovery proceedings and the preparation for trial and the trial of this matter and to delegate work responsibilities to selected counsel as may be required;
(h) to supervise any other matters concerning the prosecution, resolution or settlement of the action; and
(i) all duties as required by applicable law, rules, or the Court's order.